UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GEORGE E. WIDMAN,<br><br>Plaintiff,<br><br>v.<br><br>FISERV SOLUTIONS, LLC d/b/a FISERV,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 8:26-cv-341 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff George E. Widman alleges as follows:

I. JURISDICTION AND VENUE

1. This action arises from Defendant's unlawful employment practices in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq.
2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117(a).
3. Venue is proper in the District of Nebraska pursuant to 42 U.S.C. § 12117(a), 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1391 because the unlawful employment practices alleged herein occurred in Nebraska.

II. PARTIES

4. Plaintiff George E. Widman is an individual residing in Council Bluffs, Iowa.
5. Defendant Fiserv Solutions, LLC d/b/a Fiserv is a limited liability company doing business in Nebraska.
6. Defendant operated a facility located at or near 7007 North 97th Circle, Omaha, Nebraska 68122.
7. Defendant employed Plaintiff within the meaning of the ADA.

8. At all relevant times, Defendant employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

9. Defendant acted through its managers, supervisors, human resources personnel, employees, agents, and third-party leave administrators.

## III. FACTUAL ALLEGATIONS

10. Plaintiff began employment with Defendant on or about July 16, 2019.

11. Plaintiff was hired by Defendant as a Customer Service Engineer, and his job title later changed to Technical Engineer. His duties included repair and maintenance of production machines and related technical work.

12. Plaintiff has disabilities and a record of disabilities within the meaning of the ADA.

13. Plaintiff's disabilities and medical limitations include severe hearing loss/deafness, communication limitations, and physical limitations affecting his ability to carry tools and equipment.

14. Plaintiff returned to work after an extended medical absence with significant hearing impairment.

15. Without his cochlear implants and processors, Plaintiff has no functional hearing, and even with them he could not reliably understand speech in the workplace.

16. Defendant knew Plaintiff had significant hearing-related limitations, communication limitations, and physical limitations affecting his ability to carry tools and equipment.

17. Plaintiff was qualified to perform the essential functions of his position with reasonable accommodations.

18. Plaintiff had substantial technical experience and performed his job satisfactorily.

### A. Plaintiff's Disability-Related Accommodations

19. In or around September 2023, Plaintiff requested disability-related accommodations.

20. Plaintiff requested permission to use captioning, transcription, or dictation software on his phone because he needed captioning, transcription, or other technology to understand spoken communications.

21. Plaintiff also requested permission to use a cart for his toolbox and supplies because carrying tools and equipment was difficult due to his physical limitations, including balance issues and prior shoulder restrictions.

22. Defendant granted those accommodations.

23. Plaintiff's phone-based captioning/transcription software and tool cart were necessary for Plaintiff to perform his job safely and effectively.

24. Although Defendant granted Plaintiff's accommodations on paper, Defendant failed to protect Plaintiff's ability to use those accommodations without harassment, mockery, and interference.

B. Disability-Based Harassment and Interference With Accommodations

25. After Plaintiff began using his accommodations, coworkers mocked, harassed, and interfered with Plaintiff because of his disabilities and his use of accommodations.

26. The employees involved included, among others, Technical Engineers Russell Ely, Weston Lamgo, and Greg Malin.

27. Ely repeatedly yelled or spoke excessively loudly at Plaintiff.

28. Ely would initiate conversations with Plaintiff and then wave Plaintiff off when Plaintiff attempted to use his phone-based communication accommodation.

29. Plaintiff repeatedly explained that he was deaf or substantially unable to understand speech and needed to use captioning software to communicate.

30. Lamgo would lean near Plaintiff and whisper things Plaintiff could not hear and that Plaintiff's captioning device could not capture.

31. Malin would laugh at this conduct.

32. On at least one occasion, Malin insulted Plaintiff.

33. Coworkers also mocked Plaintiff by mouthing words without sound, laughing, snapping their fingers around him, and otherwise exploiting Plaintiff's inability to hear.

34. Coworkers interfered with Plaintiff's tool cart, toolbox, and tools.

35. Plaintiff's cart and tools were necessary for Plaintiff to perform his work safely and effectively with his physical limitations.

36. Hiding, tampering with, moving, or removing items from Plaintiff's cart and toolbox interfered with Plaintiff's ability to perform his job.

37. The harassment and interference were not isolated.

38. The conduct continued for approximately one year before Plaintiff's November 29, 2024 Human Resources complaint.

C. Plaintiff's Prior Reports to Management

39. Plaintiff repeatedly reported mistreatment, alienation, communication difficulties, and interference with his cart and toolbox to Supervisor Darrin Schwery.

40. Plaintiff reported these issues to Schwery by text message and in person.

41. Months before Plaintiff's November 29, 2024 Human Resources complaint, Plaintiff reported to Schwery that coworkers were belittling him, ignoring him, laughing at him, treating him as incompetent, and alienating him because he needed to use a device to understand workplace communications.

42. Plaintiff specifically reported that Ely would give Plaintiff a strange look and walk away when communicating with Plaintiff.

43. Plaintiff told Schwery that Plaintiff was starting to feel alienated because he had to use a device to understand most workplace communications.

44. In November 2024, Plaintiff reported to Schwery that coworkers were interfering with Plaintiff's cart, toolbox, and tools.

45. Plaintiff reminded Schwery that Plaintiff's cart was connected to HR paperwork and Plaintiff's disability-related limitations.

46. Plaintiff requested that Defendant review camera footage relating to the interference with his cart and toolbox.

47. Schwery responded by suggesting that Plaintiff clean off or relocate the cart.

48. Defendant did not take action reasonably calculated to determine who was interfering with Plaintiff's cart, toolbox, or tools, or to prevent further interference.

49. After Plaintiff complained to Schwery, the conduct would sometimes temporarily stop and then resume.

50. Defendant knew or should have known that its responses were ineffective.

D. November 28/29, 2024 Incident

51. On the overnight shift beginning November 28, 2024 and continuing into November 29, 2024, Russell Ely was acting as supervisor.

52. At the beginning of the shift, Plaintiff was performing his job duties and preparing printers or equipment for operation.

53. Ely approached Plaintiff and yelled at Plaintiff, using profanity, regarding what Plaintiff was doing.

54. During that shift, Plaintiff texted Schwery that Ely had been yelling at Plaintiff first thing that night.

55. Plaintiff later determined that one of the printers needed a part Plaintiff knew was in stock.

56. Plaintiff began the process of repairing the printer.

57. Ely returned and yelled at Plaintiff again from a closer distance.

58. Ely screamed at Plaintiff that Plaintiff had the wrong part and that the correct part was on order.

59. Plaintiff attempted to explain that Defendant stocked a part that could be modified quickly and used in both applications.

60. Ely continued yelling at Plaintiff and waved Plaintiff off.

61. An operator, later identified as Manita Magar, was standing nearby and reacted to Ely's yelling.

62. Plaintiff did not complete the repair because of Ely's conduct.

63. Plaintiff later asked Production Supervisor Benjamin "Bo" Butts and Kevin Hall whether they heard Ely scream at Plaintiff, and both acknowledged hearing it.

64. Later that morning, Plaintiff informed Schwery that Plaintiff intended to contact Human Resources regarding Ely and Ely's attitude toward Plaintiff.

65. The relevant events occurred in areas covered by Defendant's cameras.

66. Plaintiff asked Defendant to review the available footage.

E. Plaintiff's November 29, 2024 Human Resources Complaint

67. On November 29, 2024, Plaintiff emailed HR Manager Gayla Baker.

68. Plaintiff reported that he had been having problems with other technical employees for approximately the prior year.

69. Plaintiff reported that Ely, Lamgo, and Malin had done hurtful and derogatory things to him.

70. Plaintiff reported that he had previously told Schwery about the incidents and that the bullying and teasing had not stopped.

71. Plaintiff explained that he had returned to work deaf, that his cochlear implants were not working as well as he had hoped, and that speech remained difficult for him to understand.

72. Plaintiff explained that he used captioning software to communicate.

73. Plaintiff reported that Ely yelled at him and waved him off.

74. Plaintiff reported that Lamgo whispered near him in a way Plaintiff could not hear and that Plaintiff's captioning device could not capture.

75. Plaintiff reported that Malin laughed at the conduct and insulted Plaintiff.

76. Plaintiff reported that coworkers had been tampering with his tools and tool cart.

77. Plaintiff asked Defendant to review camera footage.

78. Plaintiff asked that any follow-up occur by email because phones were not an effective method of communication for him.

79. Plaintiff's November 29, 2024 email placed Defendant on actual notice of disability-based harassment, interference with accommodations, prior reports to supervision, and Plaintiff's need for accessible written communication.

F. Defendant's Investigation and Failure to Remediate

80. Defendant referred Plaintiff's complaint to Human Resources and management personnel.

81. Plaintiff met with Defendant regarding his complaint.

82. Defendant informed Plaintiff that it would investigate.

83. Defendant later claimed it could not substantiate Plaintiff's allegations.

84. Upon information and belief, Defendant failed to conduct a reasonable investigation into all relevant evidence, including Plaintiff's prior reports and available camera footage.

85. Defendant failed to take action sufficient to make it safe for Plaintiff to return to the same workplace.

86. Defendant failed to take prompt and effective remedial action to stop the disability-based harassment.

G. Medical Leave, Alight, and Defendant's Failure to Engage

87. After the November 28/29, 2024 incident and Human Resources complaint, Plaintiff's mental and physical health deteriorated.

88. On or about December 1, 2024, Plaintiff informed Schwery that Plaintiff did not know whether he would be able to return to work.

89. On or about December 2, 2024, Plaintiff informed Schwery that Plaintiff would not be coming to work and would be seeing his doctor because of the way Ely had screamed at him.

90. Plaintiff sought medical treatment.

91. Plaintiff's primary care provider assessed Plaintiff as suffering from PTSD and/or significant anxiety symptoms related to the workplace situation, and a psychiatrist later reaffirmed the diagnosis.

92. Plaintiff's medical provider advised Plaintiff to take time away from work.

93. Plaintiff began a disability-related leave of absence.

94. Defendant used a third-party administrator, Alight Solutions, to administer leave and disability-related benefits.

95. Defendant remained responsible for complying with the ADA despite using a third-party administrator.

96. Defendant knew Plaintiff was deaf or substantially limited in hearing.

97. Defendant knew phones were not an effective way for Plaintiff to communicate because Plaintiff is deaf and relies on sign language, captioning, transcription, or other technology to understand spoken communications.

98. Plaintiff requested help navigating the leave and benefits process because Alight repeatedly expected Plaintiff to communicate by phone, which was not an effective or reliable method of communication for him.

99. Defendant failed to provide effective accessible assistance or reliable written communication to Plaintiff in navigating the leave and benefits process.

100. Plaintiff's leave paperwork and accommodation paperwork became confused or misdirected between Defendant, Alight, and Plaintiff's medical providers.

101. Plaintiff repeatedly asked how to correct or update the paperwork.

102. Defendant and/or Alight denied or delayed approval of disability-related wage-replacement benefits.

103. Plaintiff depended on those wage-replacement benefits, and the denial or delay of those benefits caused financial harm.

104. Plaintiff later experienced additional medical complications and attempted to update or refile his leave and benefits documentation.

105. Defendant failed to meaningfully assist Plaintiff in updating, correcting, or resubmitting his leave and disability-benefit paperwork.

106. Defendant failed to engage in a good-faith interactive process regarding Plaintiff's disability-related leave, communication barriers, benefits, and return-to-work needs.

107. Plaintiff has not returned to work at Defendant's facility since November 29, 2024 because the workplace events and Defendant's failure to remediate caused Plaintiff to experience severe anxiety, PTSD symptoms, and fear of returning to the same environment.

108. Plaintiff lost wages, benefits, and/or disability-related wage replacement.

109. Plaintiff suffered emotional distress, humiliation, anxiety, embarrassment, loss of dignity, and other damages.

110. Defendant knew Plaintiff had federally protected disability rights, knew Plaintiff required accommodations to communicate and safely perform his job, and acted with reckless indifference to those rights by failing to stop known disability-based harassment, failing to protect Plaintiff's use of accommodations, and failing to provide an accessible leave and return-to-work process.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

111. Plaintiff timely filed a Charge of Discrimination with the Nebraska Equal Opportunity Commission and the Equal Employment Opportunity Commission.

112. Following completion of the administrative process, Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission.

113. This action is timely filed within ninety days of Plaintiff's receipt of the Notice of Right to Sue.

114. Plaintiff has exhausted all administrative prerequisites to suit.

## V. CLAIMS FOR RELIEF

### COUNT I

### DISABILITY HARASSMENT / HOSTILE WORK ENVIRONMENT

(Americans with Disabilities Act)

115. Plaintiff incorporates the preceding allegations.
116. Plaintiff is disabled and has a record of disability within the meaning of the ADA.
117. Plaintiff was qualified to perform the essential functions of his position with reasonable accommodations.
118. Plaintiff was subjected to unwelcome harassment because of his disabilities and use of accommodations.
119. The harassment included yelling, mocking, whispering in a manner designed to defeat Plaintiff's captioning accommodation, mouthing words without sound, snapping fingers, laughing at Plaintiff, insulting Plaintiff, waving Plaintiff off when Plaintiff attempted to communicate, and interfering with Plaintiff's tool cart, toolbox, and tools.
120. The harassment was based on Plaintiff's hearing disability, physical limitations, record of disability, and use of accommodations.
121. The harassment was severe or pervasive enough to alter the terms and conditions of Plaintiff's employment.
122. Defendant knew or should have known of the harassment.
123. Defendant failed to take prompt and effective remedial action.
124. Defendant's conduct violated the ADA.
125. Plaintiff suffered damages as a result.

COUNT II

DISABILITY DISCRIMINATION / INTERFERENCE WITH TERMS, CONDITIONS, AND PRIVILEGES OF EMPLOYMENT

(Americans with Disabilities Act)

126. Plaintiff incorporates the preceding allegations.

127. Plaintiff is disabled and has a record of disability within the meaning of the ADA.

128. Plaintiff was qualified to perform the essential functions of his position with reasonable accommodations.

129. Defendant subjected Plaintiff to different terms, conditions, and privileges of employment because of Plaintiff's disabilities, record of disability, and use of accommodations.

130. Defendant permitted coworkers to interfere with Plaintiff's accommodations and failed to protect Plaintiff's ability to use those accommodations.

131. Defendant failed to address disability-based harassment that interfered with Plaintiff's ability to perform his job and safely remain in the workplace.

132. Defendant failed to meaningfully address Plaintiff's disability-related communication barriers in the leave, benefits, wage-replacement, and return-to-work process.

133. Defendant's actions caused Plaintiff to lose wages, benefits, and/or disability-related wage replacement and treated Plaintiff's disability-related limitations as problems to be managed against Plaintiff rather than accommodated.

134. Defendant's conduct violated the ADA.

135. Plaintiff suffered damages as a result.

COUNT III

RETALIATION

(Americans with Disabilities Act)

136. Plaintiff incorporates the preceding allegations.

137. Plaintiff engaged in protected activity under the ADA.

138. Plaintiff requested reasonable accommodations.

139. Plaintiff used reasonable accommodations.

140. Plaintiff complained to management and Human Resources about disability-based harassment and interference with accommodations.

141. Plaintiff requested disability-related medical leave and return-to-work accommodations.

142. Defendant subjected Plaintiff to materially adverse actions after Plaintiff engaged in protected activity.

143. Those actions included allowing harassment and interference to continue, failing to remediate known harassment, failing to provide effective assistance in the leave and benefits process, mishandling Plaintiff's disability-related leave and benefit issues, and failing to provide a safe and reasonable return-to-work process.

144. Defendant's actions would dissuade a reasonable employee from requesting accommodations or complaining about disability-based harassment.

145. Defendant's actions were causally connected to Plaintiff's protected activity.

146. Defendant's conduct violated the ADA.

147. Plaintiff suffered damages as a result.

COUNT IV

FAILURE TO ACCOMMODATE / FAILURE TO ENGAGE IN INTERACTIVE PROCESS

(Americans with Disabilities Act)

148. Plaintiff incorporates the preceding allegations.

149. Plaintiff is disabled within the meaning of the ADA.

150. Defendant knew Plaintiff had disabilities affecting hearing, communication, balance, and related medical conditions.

151. Plaintiff required reasonable accommodations, including accessible communication, use of captioning software, use of a tool cart, disability-related leave, assistance navigating leave and disability-benefit processes, and a safe return-to-work arrangement.

152. Defendant initially granted Plaintiff's phone-based communication accommodation and tool-cart accommodation.

153. Defendant nevertheless failed to ensure Plaintiff could effectively use those accommodations without coworker interference, harassment, or retaliation.

154. Defendant also failed to engage in a good-faith interactive process regarding Plaintiff's disability-related leave, communication barriers with Alight, medical paperwork issues, changed medical circumstances, and return-to-work needs.

155. Defendant knew Plaintiff could not effectively use telephone communication.

156. Defendant nevertheless relied on a leave-administration process that was inaccessible or ineffective for Plaintiff.

157. Defendant failed to provide reasonable assistance or alternative accessible communication methods to allow Plaintiff to meaningfully participate in the leave and benefits process.

158. Defendant failed to engage in a good-faith interactive process regarding Plaintiff's request to return to Plaintiff's existing job with effective protection from harassment.

159. Reasonable accommodations were available.

160. Defendant's conduct violated the ADA.

161. Plaintiff suffered damages as a result.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Award back pay and lost wages;

C. Award lost benefits;

D. Award front pay, if appropriate;

E. Award compensatory damages;

F. Award damages for emotional distress, humiliation, embarrassment, and loss of dignity;

G. Award punitive damages as permitted by law;

H. Award prejudgment and post-judgment interest;

I. Award reasonable attorneys' fees and costs;

J. Award equitable and injunctive relief, including appropriate workplace accommodation and anti-retaliation relief if applicable; and

K. Award such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: July 13, 2026.

s/ Shakil A. Malik
Shakil A. Malik
Bar Number: 24697
Attorney for Plaintiff
High & Younes LLC
6919 Dodge Street
Omaha, NE 68132
Telephone: (402) 933-3345
Email: shakil@hyattorneys.com